**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 5, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ANA SOFIA CORTEZ; M.Y.A.C.,

    Petitioners,

v.

PAMELA J. BONDI, United States
Attorney General,

    Respondent.

No. 23-9586

_____

**Petition for Review from the Board of Immigration Appeals**
_____

Mark Robert Barr, Lichter Immigration, Denver, Colorado, for Petitioners.

M. Samer Budeir (Cindy S. Ferrier, Assistant Director, and Andrew N. O'Malley, Senior Litigation Counsel, on the brief), Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.
_____

Before **HARTZ**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

At proceedings before an immigration judge (IJ), Petitioners admitted that they were removable but sought relief from removal on several grounds. When the IJ denied relief, they tried to appeal to the Board of Immigration Appeals (the Board or BIA). The BIA dismissed their appeal for failure of their attorney to sign the proof-

of-service form. They now petition this court to review a later decision of the BIA, which rejected a second notice of appeal and an accompanying motion to accept their initial notice of appeal.

Petitioners do not challenge the BIA's rejection of their second notice of appeal, so we affirm the rejection. Petitioners' principal contention in this court is that the BIA erred in holding that a signature was required in the proof-of-service section of their initial notice-of-appeal form, while the government defends the BIA's holding and contends that, in any event, Petitioners waited too long to challenge the BIA's rejection of that filing. We conclude that Petitioners are correct on the signature-requirement issue because the BIA's holding was wrong as a matter of law. And we decline to consider the government's argument that the challenge to the rejection was untimely because the BIA did not rely on that argument below. Exercising jurisdiction under 8 U.S.C. § 1252, we vacate the BIA's order and remand for further proceedings not inconsistent with this opinion.

## I.    BACKGROUND

Petitioners Ana Sofia Cortez and M.Y.A.C.,[1] her minor son, are natives and citizens of El Salvador. Shortly after they entered the United States without permission in 2021, the Department of Homeland Security (DHS) initiated removal proceedings against them. In response, Ms. Cortez filed an application for asylum,

---

[1] We refer to the child by his initials, in keeping with our policy of protecting minor children from public disclosure.

2

withholding of removal, and protection under the Convention Against Torture. Her son was listed as a derivative beneficiary on her application for asylum.

On June 21, 2022, the IJ denied Petitioners' applications and ordered them removed to El Salvador. Any notice of appeal had to be filed with the BIA "within 30 calendar days." 8 C.F.R. § 1003.38(b).

Near the end of that 30-day window, on July 20, 2022, Petitioners' attorney filed a notice-of-appeal form. He did so via the Electronic Courts and Appeals System (ECAS) of the Executive Office for Immigration Review (EOIR). After specifying the reasons for the appeal, he signed his name on a signature line. Regarding the proof of service, the form's instructions stated: "Complete and, *if applicable*, sign the 'Proof of Service' to show you did this . . . ." Admin. R. at 60 (emphasis added). In the proof-of-service section, below another signature line, the attorney checked a box indicating: "No service needed. I electronically filed this document, and the opposing party is participating in ECAS." *Id.* at 113. He left blank the signature line above the box. This section of the notice-of-appeal form is depicted below:

**PROOF OF SERVICE (You Must Complete This)**

I_____mailed or delivered a copy of this Notice of Appeal
(Name)

on _____ to _____
(Date)                                                          (Opposing Party)

at _____
(Number and Street, City, State, Zip Code)

| SIGN → HERE | X _____ |
| --- | --- |
| | Signature |

☑ No service needed. I electronically filed this document, and the opposing party is participating in ECAS.

NOTE: If you are the Respondent or Applicant, the "Opposing Party" is the Assistant Chief Counsel of DHS - ICE.

WARNING: If you do not complete this section properly, your appeal will be rejected or dismissed.

*Id.*

On August 1, 2022, the BIA sent Petitioners a "Rejected Filing" notice. *Id.* at 115. It said that their notice of appeal was "rejected for the following reasons": "Document(s) not signed or improperly signed (e.g. wrong person signed it)." *Id.* The notice gave them 15 days to correct the error and request certification to permit a discretionary appeal to the BIA. It stated:

> We have rejected your appeal or motion for correction of the defect(s). If you correct and refile this appeal or motion, YOU MUST ATTACH THIS REJECTION NOTICE to the corrected document. THIS DOES NOT EXTEND THE ORIGINAL STRICT TIME LIMIT within which you must file your appeal or motion unless otherwise noted above. Where a stay attaches to the filing of an appeal, there is no automatic stay of removal beyond the 30-day limit unless an appeal is properly filed at the BIA. Any corrected appeal or motion refiled after the original time limit must be filed within 15 days from the date of this rejection and include this notice. If you make a request to the BIA to accept the appeal or motion by certification, you must also include this notice. The BIA will consider whether to certify each request in the exercise of discretion.

4

*Id.* at 116. By this point, Petitioners' original 30-day window to appeal had passed. They did not refile within 15 days, nor did they ever move for certification.

On September 16, 2022, DHS sent Petitioners a "bag and baggage" letter ordering them to appear at one of its offices on October 31 "to discuss and provide [DHS] with travel arrangements" back to El Salvador. *Id.* at 76. Two weeks later, Petitioners filed a motion asking the IJ to "exercise her *sua sponte* authority and reopen removal proceedings and reissue" her June 21 decision. *Id.* at 98. They argued that "[t]ime [was] of the essence" because they had to appear at the end of October, and that their proposed "procedural mechanism" was "perhaps the easiest way to address an apparent agency processing error." *Id.* at 98, 101. After stating that the BIA had rejected their notice-of-appeal form because the "[d]ocument[]" was either "not signed or improperly signed (e.g. wrong person signed it)," they asserted that it *had been* signed. *Id.* at 100. They said that they therefore inferred that it was rejected because the BIA did not recognize their attorney as counsel of record. And if the rejection was related to the proof of service, they argued, that was "clear error" because "no proof of service is required when filing electronically through ECAS and when [DHS] is the opposing party." *Id.*

On November 3, 2022, the IJ denied their motion. She explained that a "motion to reopen sua sponte is not meant to cure filing defects or circumvent regulations." *Id.* at 82.

Meanwhile, in late October 2022, Petitioners had filed with the BIA a motion to accept their July 2022 notice of appeal as timely, and a few days later they had filed a notice of appeal of the IJ's June 21 removal order together with their attorney's notice of entry of appearance. But on October 31 the BIA rejected each filing as an "Improperly Combined Submission." *Id.* at 89, 91.

A lot happened on December 5. First, Petitioners tried to file a notice of appeal of the IJ's November denial of their motion to reopen, but the BIA promptly rejected it, noting that it was an "improperly combined submission," and stating explicitly that the "proof of service signature [was] missing." *Id.* at 32. Counsel for Petitioners called the BIA to ask why his filings were being rejected and was informed that there was no signature on the proof-of-service page. Finally, later that afternoon, four months after the BIA's dismissal of Petitioners' original appeal of the IJ's denial of their application for relief from removal, Petitioners filed another notice of appeal of the IJ's denial. This time, their counsel signed the proof-of-service section. Filed with that notice of appeal was a motion for reconsideration, styled as a "Motion to Accept Timely Appeal Erroneously Rejected by Board." *Id.* at 56. As the motion's caption suggests, Petitioners contended that their July 2022 appeal had been timely and the BIA's rejection had been in error. Although the rejection had been "due to the lack of a signature on the Proof of Service page," *id.* at 59, they argued that no service was required and thus no signature was required, because they had filed the form electronically via ECAS. Not only that, they said, but signing the proof of service would have violated the form's instructions.

On August 25, 2023, the BIA rejected Petitioners' December 5 appeal of the

IJ's June 2022 order and their motion to accept their July 2022 notice of appeal. First,

it said their December 5 appeal came too late:

> The respondents' appeal is untimely. A notice of appeal ("NOA") must be filed within 30 calendar days of the Immigration Judge's decision. 8 C.F.R. § 1003.38. The respondents' appeal was due on July 21, 2022. The respondents submitted an appeal on July 20, 2022. However, that appeal was rejected for filing defects on August 1, 2022. Ultimately, the respondents submitted a properly completed and executed appeal on December 5, 2022. As such, the December 5, 2022, appeal was untimely filed. The respondents have not requested that the Board accept the appeal by certification, and we are unaware of any extraordinary circumstances that would warrant such an exercise of discretion.

*Id.* at 86. Second, the BIA rejected Petitioners' argument (which had been made only

in the motion to accept the July 2022 notice of appeal) that it had erred in rejecting

their initial notice of appeal for lack of a signature in the proof of service:

> The respondents argue that their NOA was filed timely but was rejected on August 1, 2022, in error (as were their subsequent motions to accept the appeal as timely filed). Specifically, they argue that they filed the NOA electronically through [ECAS] and, as such, they were not required to serve the NOA on DHS. Because they were not required to separately serve the NOA on DHS, they argue, the certificate of service did not have to be signed (though they point out that their attorney did sign the NOA). The respondents argue that the requirement that the certificate of service be signed is inconsistent with the NOA instructions which only require a signature "if applicable," and that it is not applicable where service is effectuated through ECAS.
>
> We are unpersuaded by the respondents' argument. Specifically, although the respondents are correct that ECAS will effectuate service of the NOA on DHS, the Board nonetheless requires that the certificate of service be signed by the person executing the document, in addition to have [sic] having the appropriate box marked to reflect electronic filing. *See* BIA Practice Manual § 3.2(d) (Proof of Service); ECAS User Manual § 4. The Board does not deem the certificate of service 'completed' unless the appropriate box is marked and the form is signed.

7

*Id.* at 86–87. As we understand the BIA decision, the first above-quoted paragraph is its disposition of Petitioners' December 5 notice of appeal, and the next two paragraphs dispose of Petitioners' motion to reconsider, which requested the BIA to accept the July notice of appeal.

Petitioners timely petitioned for review of this decision.[2] Their brief in this court, however, does not challenge the rejection of their December notice of appeal. Thus, we review only the denial of their motion to reconsider.

## II.    DISCUSSION

"The decision to grant or deny a motion to . . . reconsider is within the discretion of the Board, subject to [restrictions in the regulations, not at issue in this case]." 8 C.F.R. § 1003.2(a). "We review BIA decisions on motions to reopen and motions to reconsider for an abuse of discretion." *Zapata-Chacon v. Garland*, 51 F.4th 1191, 1195 (10th Cir. 2022) (internal quotation marks omitted). "If the BIA commits a legal error—a determination we make de novo—it necessarily follows that the BIA abused its discretion." *Estrada-Cardona v. Garland*, 44 F.4th 1275, 1282 (10th Cir. 2022).

A motion to reconsider a decision must be filed within 30 days of the mailing of the decision. *See* 8 C.F.R § 1003.2(b)(2). But "[t]he Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." *Id.*

---

[2] The BIA's dismissal of Petitioners' appeal from the IJ's denial of their motion to reopen is not before us. *See* Pet. Br. at 7 ("That Board decision is not at issue here."); Resp. Br. at 12 (same).

§ 1003.2(a). Thus, an untimely motion to reconsider may be viewed by the BIA as a motion to exercise its sua sponte authority to reconsider, which is the situation before us. *See* Oral Arg. at 14:50–15:15 (Petitioners' Counsel: "I've interpreted my motion as a request for the Board to exercise its sua sponte authority to reconsider or reopen a decision which it has made, and I've interpreted its ultimate denial of the motion, and of the timeliness of the original notice of appeal, as its decision not to exercise its discretionary, sua sponte authority."). At least for the purposes of this appeal, our standard of review is the same regardless of whether Petitioners' motion was timely. *See Berdiev v. Garland*, 13 F.4th 1125, 1130 (10th Cir. 2021) ("[T]his Court generally lacks jurisdiction to review a BIA decision as to whether to reopen sua sponte, because there are no standards by which to judge the agency's exercise of discretion. We may, however, remand where the BIA bases its discretionary decision on an incorrect legal premise." (citation and internal quotation marks omitted)). Therefore, for simplicity we will refer to Petitioners' motion as a motion to reconsider rather than as a motion to exercise sua sponte authority.

### A.    Purported Signature Requirement

Petitioners contend that the BIA erred as a matter of law in holding that their attorney was required to sign their notice-of-appeal form's proof-of-service section, even though he filed electronically and checked a box confirming that no separate service was needed. Based on the BIA form and its regulations at that time, we agree. Because the BIA predicated its denial of Petitioners' motion to reconsider on an

erroneous view of the law, we must reverse that denial and remand for further proceedings.

To begin with, the instructions for the form itself indicate that no signature is required for the proof of service when service is made electronically. The instructions state that electronic filers need not serve the opposing party:

> Mail or give a copy of the completed Notice of Appeal and any attached documents to the opposing party, if applicable. *Electronic filers are not required to serve the opposing party if the opposing party is participating in ECAS.* EOIR's ECAS system will provide an electronic service notification to participating parties.

Admin. R. at 60 (emphasis added). And they also indicate (rather logically) that there is no signing requirement when the appellant is not responsible for service:

> Complete and, *if applicable*, *sign* the 'Proof of Service' to show you did this . . . .

*Id.* (emphasis added); *see* General Instructions for Form EOIR-26 at 2 (revised Nov. 2022), *available at* https://www.justice.gov/eoir/eoir-forms (current version using identical language).

The government admits that the if-applicable sentence "injects a degree of ambiguity into the process." Resp. Br. at 22. But that is an understatement. The form clearly implies that there are situations where signing the proof of service is *inapplicable*. And the obvious situation is where it is unnecessary to "show you did this"—serve the opposing party—because you filed electronically. Admin. R. at 60.

Petitioners did not violate the form's inartful instructions by checking the "[n]o service needed" box and leaving the signature line above it blank. *Id.* at 113.

10

The later revision of the form's proof-of-service section does not help the government's argument. The revision places the signature line *below* the checkbox, which better suggests that a signature is required even if the box is checked. *See* Form EOIR-26 (revised Nov. 2022). This move only cements our conclusion.[3]

The government also relies on official publications, which it claims require the signature not provided by Petitioners' attorney. Even if we accepted this argument, due-process concerns would make us hesitate to penalize Petitioners for complying with the most reasonable interpretation of the form's instructions. But we need not address that issue because we do not accept the government's interpretation of its documents. Nothing in the relevant regulations or agency manuals suggests that a signature was required on the proof-of-service section in the circumstances presented here.

---

[3] The government points to two notice-of-entry-of-appearance forms that Petitioners' counsel filed with the BIA the day before he filed the initial notice of appeal, where, in the proof-of-service sections, he checked the boxes saying "[n]o service needed" *and* signed the signature lines. Admin. R. at 108, 110. Based on these filings, the government asserts that "Petitioners cannot reasonably claim that they were unaware that their proof of service should include a signature or that they were confused by the requirement." Resp. Br. at 23. This argument is unpersuasive. It ignores that the format of the entry-of-appearance forms was different from that of the original notice-of-appeal form, in that their signature lines were placed *below* the no-service-needed checkboxes, instead of above them. Again, this layout better suggested that a signature was required even if the box was checked, whereas the latter design suggested the opposite. More importantly, however, Petitioners' understanding of these forms is irrelevant to our conclusion that, *as a matter of law*, the proof-of-service section in the original notice-of-appeal form did not require a signature if the box was checked.

To begin with, the BIA cited the "Notice of appeal" regulation providing that an "appeal must reflect proof of service of a copy of the appeal and all attachments on the opposing party." 8 C.F.R. § 1003.3(a)(1). The regulation also provides, however, that "[i]f all parties are using EOIR's electronic filing application in a specific case, the parties do *not* need to serve a document that is filed through EOIR's electronic filing application on the opposing party," because the "application will effectuate service by providing a notification of all electronically filed documents on all parties by email." *Id.* § 1003.3(g)(6)(i) (emphasis added). On the subject of signatures, the regulation just says that "[a]ll *documents* filed with the Board that require a signature must have an original, handwritten ink signature, an encrypted digital signature, or an electronic signature," and that "[e]lectronic filings submitted through EOIR's electronic filing application that require the user's signature may have a conformed signature." *Id.* § 1003.3(g)(5) (emphasis added). This language does not support the BIA's position, because it describes only *how* to submit a signature, not *when* a signature is required. Here, Petitioners' counsel did sign the "document[]," *i.e.*, the notice-of-appeal form. *Id.* And to nail the lid shut on the government's reliance on § 1003.3, the regulation in any event defers to the language on the form, saying in the final sentence, "This paragraph is subject to the requirements of the application or document being submitted." In short, 8 C.F.R. § 1003.3 is silent on whether the proof of service must be signed. The government concedes as much—for this regulation as well as all others. *See* Resp. Br. at 20

12

("[T]he regulations in effect, as now, did not expressly state that the proof of service must bear a signature.").

The agency manuals that the BIA relied on do not support its holding either. True, the version of the BIA's Practice Manual available when Petitioners filed their original notice of appeal stated, "Every Proof of Service must be signed by the person serving the document." EOIR, *Board of Immigration Appeals Practice Manual* § 3.2(d) at 36 (Jan. 8, 2021). But the directive "must be signed" is limited by the phrase "*by the person serving the document*." *Id.* (emphasis added). It does not address the situation at hand, where a person did not serve the document—a machine automatically did—and the document therefore indicated that no separate service was necessary.

Moreover, the manual said almost nothing about electronic filing and, in particular, it did not recognize electronic filing of notices of appeal. All it said about filing was: (1) "All filings to the Board must be sent to [a specified] *street address*," *id.* § 3.1(a)(iii) at 31 (emphasis added); (2) "The Board does not accept faxes or other electronic transmissions without prior authorization," *id.* § 3.1(a)(v)(A) at 32; and (3) "The Board does not have electronic filing for *any* other forms or documents" besides notices of entries of appearance, *id.* § 3.1(a)(vi) at 33. And regarding signatures on notices of appearance, the manual said that "the electronic acknowledgment and submission of the Form EOIR-27 constitutes the signature of the alien's representative," and that "[o]ther computer-generated signatures . . . are not acceptable on documents filed with the Board." *Id.* § 3.3(b)(ii) at 38. The manual

does not even recognize the method of service expressly allowed by Form EOIR-26. It hardly supports the government's argument.

The government also relies on manuals issued *after* Petitioners filed their initial notice of appeal with the BIA. Of course, they could not be binding on Petitioners. In short, the BIA's rejection of Petitioners' motion for reconsideration was predicated on an error of law and must be set aside.

### B.    Timeliness of the Challenge

Alternatively, the government contends that Petitioners failed to take "timely action" after the BIA rejected their initial notice of appeal. Resp. Br. at 15. The government asserts that they had the opportunity to raise the signature-requirement issue with the BIA in a "timely pleading," but they did not. *Id.* at 11. Instead, the government says, they "chose not to take corrective action for months." *Id.* at 16. The government thus implies that the motion to reconsider could have been properly denied as untimely.

But the BIA did not state that ground for denying the motion. And ordinarily we "are not at liberty to search the law and the record for reasoning to support the BIA's decision because a court may not uphold an agency action on grounds not relied on by the agency." *Zapata-Chacon*, 51 F.4th at 1196 (internal quotation marks omitted) (noting, however, that "we can avoid a remand if it would be futile"); *see Sarr v. Gonzales*, 474 F.3d 783, 791 (10th Cir. 2007) ("By refraining from deciding immigration appeals on the basis of grounds not expressly or impliedly adopted by the BIA, we safeguard agency decision making by ensuring that the agency itself

makes the decisions entrusted to its authority based on grounds articulated by that entity." (internal quotation marks omitted)). Because the sole ground stated by the BIA for denying Petitioners' motion to reconsider was legally unsound, we must set aside that denial.

## III.    CONCLUSION

We **VACATE** the BIA's decision and **REMAND** to the BIA for such further proceedings, not inconsistent with this opinion, as may be appropriate.